# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MINDY U.[1], | : | Case No.  3:20-cv-447 |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

Plaintiff Mindy U. brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #17), the Commissioner's Memorandum in Opposition (Doc. #19), Plaintiff's Reply (Doc. #20), and the administrative record (Doc. #13).

## I.    Background

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1),

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.  *See also* S.D. Ohio General Rule 22-01.

1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income benefits on January 2, 2018, alleging disability due to several impairments, including chronic eczema, a fractured spine, herniated and bulging discs, and chronic nerve pain in her back. (Doc. #13, *PageID* #327). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Cindy Martin. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] She reached the following main conclusions:

Step 1: Plaintiff engaged in substantial gainful activity between January to April 2019. However, there has been a continuous twelve-month period during which Plaintiff did not engage in substantial gainful activity.

Step 2: Plaintiff has the following severe impairments: noninsulin-dependent diabetes mellitus (NIDDM), thoracic degenerative disc disease, eczema/dermatitis, and obesity.

Step 3: Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work … except [Plaintiff] can never climb ladders, ropes, or scaffolds but she can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and/or crawl. [She] can tolerate occasional exposure to extreme temperatures, wetness, humidity, and pulmonary

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

|  |  |
|---|---|
|  | irritants such as fumes, odors, dusts, gases, and areas of poor ventilation. [Plaintiff] must avoid all exposure to workplace hazards such as unprotected heights and/or dangerous moving machinery." |
|  | Plaintiff is unable to perform her past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. |

(Doc. #13, *PageID* #s 60-72). Based on these findings, the ALJ concluded that Plaintiff has not been under a disability since September 11, 2017. *Id.* at 72.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #13, *PageID* #s 60-72), Plaintiff's Statement of Errors (Doc. #17), and the Commissioner's Memorandum in Opposition (Doc. #19). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

3

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In her Statement of Errors, Plaintiff contends the ALJ erred by failing to find any severe mental health impairment at Step Two. (Doc #17, *PageID* # 1322-25). The Commissioner maintains that substantial evidence supports the ALJ's determination of Plaintiff's severe impairments and her RFC. (Doc. #19, *PageID* #s 1335-41).

At Step Two of the five-step sequential evaluation process, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimaint's] physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a); SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). Basic work activities are defined as "abilities and aptitudes necessary to do most jobs." *Id.* at § 404.1522(b).

The Sixth Circuit has construed Step Two as a "*de minimis* hurdle." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Under this view, "an impairment can be

considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citation omitted).

In the present case, the ALJ found at Step Two that Plaintiff had several severe physical impairments: noninsulin-dependent diabetes mellitus, thoracic degenerative disc disease, eczema/dermatitis, and obesity. (Doc. #13, *PageID* #63). The ALJ also found that Plaintiff had non-severe impairments: controlled hypertension and affective/anxiety disorder. *Id.* at 64.

In the ALJ's discussion of Plaintiff's mental impairments, she recognized that the consultative examiner diagnosed affective disorder and anxiety disorder and that the record-reviewing psychological consultants found two severe mental impairments. *Id.* at 64. However, the ALJ was not persuaded by their opinions because Plaintiff "never sought ongoing treatment, her mood and affect were routinely unremarkable, and there was no evidence of more than mild limitations in any of the four broad functional areas known as the 'paragraph B' criteria." *Id.* (citations omitted).

The ALJ then reviewed each of the "paragraph B" categories. Specifically, in the area is understanding, remembering or applying information this area, the ALJ concluded that Plaintiff had no more than mild limitations because Plaintiff retained the ability to prepare meals, manage her finances, go to doctor's appointments unaccompanied, provide information about her health, respond to questions from medical providers, follow her prescribed regimens, shop, drive, and read. *Id.* Additionally, based on her work as manager of Dollar Tree, the ALJ concluded that she remained capable of performing simple and complex work activities. *Id.*

5

Likewise, the ALJ found that Plaintiff has no more than mild limitations in interacting with others. *Id.* Although the ALJ acknowledged that Plaintiff alleged difficulty with social activities due to eczema flares and anxiety, she found that Plaintiff can get along with others (as evidenced by her extensive work in retail). Further, she can shop, spend time with friends/family, and live with others.

The ALJ similarly found that Plaintiff had no more than mild limitations in her ability to concentrate, persist, or maintain pace. The ALJ noted that although Plaintiff claimed to have limitations in maintaining a regular work schedule, the record shows that she can drive, prepare meals, watch television, manage funds, work as a manager in a retail environment, and handle her own medical care. *Id.* at 65. Further, "the record failed to mention distractibility or an inability to complete testing that assesses concentration and attention as noted at the consultative examination where [Plaintiff] was alert and oriented to persons, places, and time." *Id.* (citation omitted). Although Plaintiff was tangential, she was focused on her physical symptoms. *Id.* Further, the consultative examiner did not provide "definite limitations." *Id.*

Finally, the ALJ found that Plaintiff had no more than mild limitations in her ability to adapt or manage herself. The ALJ recognized that Plaintiff asserted she has difficulties managing her mood. *Id.* However, the ALJ noted that she can handle self-care and personal hygiene and get along with caregivers. Further, the record showed that Plaintiff had appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control. *Id.*

Plaintiff asserts that the ALJ unreasonably found that Plaintiff's mental health impairments are non-severe.  However, an ALJ does not generally commit reversible error by finding that an impairment is non-severe under two conditions: 1) the ALJ also found that the claimant has at least one severe impairment; and 2) the ALJ considered both the severe and non-severe impairments at the remaining Steps in the sequential evaluation.  *See Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007) ("when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz* 837 F.2d at 244); *Pompa v. Comm'r of Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) ("once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining [S]teps.") (citation omitted)).

As noted above, the ALJ meets the first condition; she found at Step Two that Plaintiff had several severe physical impairments.  (Doc. #13, *PageID* #63).  Thus, the question is whether the ALJ considered all of Plaintiff's impairments—including her mental impairments—at the remaining steps.  *See Pompa*, 73 F. App'x at 803 ("Because the ALJ found that [the claimant] had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

A review of the ALJ's decision reveals that she did not discuss affective/anxiety disorder when determining at Step Three if Plaintiff had an impairment or combination of impairments that meets or equals the Listings.  At Step Four, the ALJ only considered Plaintiff's affective/anxiety

7

disorder when assessing the opinions of the record-reviewing psychological consultants, Karen Terry, Ph.D., and Joseph Edwards, Ph.D. (Doc. #13, *PageID* #69).

Dr. Terry and Dr. Edwards found that Plaintiff had a severe depressive, bipolar, and related disorder and a severe anxiety and obsessive-compulsive disorder. *Id.* at 117, 150. They opined that Plaintiff had moderate limitations in her ability to concentrate, persist, or maintain pace and to adapt or manage oneself. *Id.* at 118, 151. Dr. Terry and Dr. Edwards opined that Plaintiff "can carry out simple and moderately complex tasks" and "can perform short cycle work with no strict production standards." *Id.* at 123, 156. Further, "[s]he retains the ability to perform job duties in a routine, stable and predictable work setting that doesn't undergo frequent changes." *Id.* at 123, 156.

The ALJ recognized that the record-reviewing consultants found that Plaintiff had severe mental impairments but was not persuaded by their opinions. The ALJ noted that Plaintiff sought no treatment and that she "was working at a semiskilled/skilled level with significant contact with coworkers, supervisors, and the general public." *Id.* at 69. Further, the ALJ referred to her earlier findings that Plaintiff's limitations were no more than mild. *Id.*

The ALJ's discussion of their opinions appears to focus on their finding that Plaintiff had severe mental impairments—not on their opined limitations related to those impairments. Indeed, the ALJ failed to address any of Dr. Terry and Dr. Edwards' opined limitations. For example, the ALJ does not discuss their opinion that Plaintiff can only perform work with no strict production standards. Further, the ALJ does not address their opinion that Plaintiff could perform job duties

in a routine, stable, and predictable work setting that does not undergo frequent changes. The ALJ similarly did not address Dr. Boerger's opined limitations at Step Four.[3]

The ALJ's limited discussion of Dr. Terry and Dr. Edward's opinions is not sufficient to establish that the ALJ considered Plaintiff's mental impairments—singly or in combination with Plaintiff's other impairments—at Step Four. Although the ALJ discusses Plaintiff's mental impairments at Step Two, "a Step Two analysis is distinct from the ALJ's obligation to consider the impact of Plaintiff's non-severe impairments in addition to and in conjunction with Plaintiff's severe impairments in assessing Plaintiff's RFC." *Singleton v. Comm'r of Soc. Sec.*, No. 3:14–cv–140, 2015 WL 2381162, at *3 (S.D.Ohio May 19, 2015) (quoting *Katona v. Comm'r of Soc. Sec.*, No. 14cv10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015)); *see also Garcia v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 805, 811 (S.D. Ohio 2015). The ALJ's analysis of Plaintiff's mental impairments at Step Two does not provide the Court with a basis to infer that Plaintiff's mental impairments, either singly or in combination with Plaintiff's other impairments, generated no work-place restrictions or limitations. Indeed, the ALJ found that Plaintiff's mental impairments caused "no more than mild limitations in any of the functional areas …." (Doc. #13, *PageID* #65). However, the ALJ does not explain what she meant by "mild limitations" and what

---

[3] Alan Boerger, Ph.D., evaluated Plaintiff in February 2018. (Doc. #13, *PageID* #828). Dr. Boerger diagnosed unspecified anxiety disorder and major depressive disorder, single episode, moderate. 13 at 832. He noted that she displayed symptoms of depression and anxiety. *Id.* at 832. For example, she was tearful through much of the examination. *Id.* at 831. Her speech was mildly pressured and tangential at times. *Id.* Dr. Boerger opined that Plaintiff appears capable of understanding instructions but she "may be variable in her ability to retain instructions depending on the level of distraction from her depression and anxiety." *Id.* at 833. She likewise "may be variable in her ability to maintain pace, persistence and concentration on her work task due to distraction from her emotional issues." *Id.* He noted that she made three errors in performing Serial 7's. *Id.* Plaintiff's "depression and anxiety may result in reduced frustration tolerance and reduced ability to deal with work pressures in the work setting." *Id.*

9

impact, if any, those limitations may have on Plaintiff's RFC. *See Katona*, No. 14-CV-10417, 2015 WL 871617, at *7.

Accordingly, reversal is warranted because the ALJ failed to consider Plaintiff's mental impairments in determining her RFC. For the above reasons, Plaintiff's Statement of Errors is well taken.

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while

contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to have this case remanded to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #17) is **GRANTED**;

2. The Commissioner's non-disability finding is vacated;

3. No finding be made as to whether Plaintiff, Mindy U. was, under a "disability" within the meaning of the Social Security Act;

4. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case is terminated on the Court's docket.

<table>
<tr><td>March 29, 2022</td><td><i>s/Peter B. Silvain, Jr.</i><br>Peter B. Silvain, Jr.<br>United States Magistrate Judge</td></tr>
</table>